UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL LEE WILSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:13CV00094 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U. S. C. § 2255 to vacate, set aside or correct sentence by Michael Lee Wilson, a person in federal custody.  On December 12, 2011, Wilson plead guilty before this Court to the offense of possession of child pornography and, on March 12, 2012, this Court sentenced Wilson to the Bureau of Prisons for a term of 135 months, a sentence within the sentencing guideline range. Wilson's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**I.    INTRODUCTION**

Michael Lee Wilson was originally charged by indictment with two counts of production of child pornography and one count of possession of child pornography. The production of child pornography charges carried a statutory mandatory minimum term of fifteen years (180 months) imprisonment. Following plea negotiations, the government dismissed the indictment, Wilson pled guilty to two counts of possession of child pornography contained in a superseding information, and the parties agreed to jointly recommend that Wilson be sentenced to a term of 135 months imprisonment. As a part of the plea agreement, Wilson agreed to waive his right to appeal if the district court ordered a 135-month sentence of imprisonment.

Wilson has filed a Petition under 28 U.S.C. Section 2255 requesting an evidentiary hearing based on allegations of ineffective assistance of counsel, as well as the appointment of counsel. Wilson made very few specific factual allegations in his petition, rather the points raised revolve primarily around his belief that he didn't receive true consideration for his guilty plea.

The record of the case supports that Wilson's counsel provided effective representation, Wilson knowingly and voluntarily entered the guilty plea and waived his right to appeal, and Wilson was sentenced in accordance with the plea agreement, which conferred a substantial benefit for the plea.

## II.    PROCEDURAL HISTORY

On November 8, 2010, law enforcement officers contacted the Movant Michael Lee Wilson at his Stoddard County residence in response to a "911" call in which the caller reported that Wilson had taken nude videos of his biological 16-year-old daughter. After Wilson consented to a search, officers discovered pornographic videos on Wilson's cellular phone and video-camera depicting his minor daughter completely nude with her legs spread in a lascivious display of her genitals. The investigation revealed that Wilson filmed the videos and had been engaging in a pattern of sexually exploiting his daughter for approximately one year by watching adult pornographic videos with her, giving her a vibrator and encouraging her to masturbate. Wilson told his daughter that he intended to send one of the videos he made to Wilson's adult male friend. (Plea Agmt. at ¶4; Plea Tr. at pp. 15-17)

On August 18, 2011, a grand jury sitting in the Southeastern Division of the Eastern District of Missouri returned an indictment against Wilson containing two counts of sexual

exploitation of a minor (production of child pornography) and one count of possession of child pornography. On December 12, 2011, Wilson waived his right to indictment by grand jury and pled guilty to a superseding information filed by the government charging Wilson with two counts of Possession of Child Pornography.

The government and Wilson jointly recommended that the appropriate base offense level was 18 as found in Section 2G2.2(a)(1) of the United States Sentencing Guidelines (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor). (Plea Agmt., ¶ 6(a)). Both parties further agreed that the following Specific Offense Characteristics applied:

(a) two levels should be added pursuant to Section 2G2.2(b)(3)(F), because "the offense involved distribution," as the defendant possessed the images with the intent to distribute them;

(b) five levels should be added pursuant to Section 2G2.2(b)(6) because "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor";

(c) two levels should be added pursuant to Section 2G2.2(b)(6) because " a computer was used for the possession, transmission, receipt, or distribution of the material";

(d) three levels should be added pursuant to Section 2G2.2(b)(7)(B) because the offense involved "at least 150 images, but fewer than 300 images"; and

(e) four levels should be added pursuant to Section 2X6.1(a) because the defendant used a minor in a crime of violence. (Plea Agmt., ¶ 6.a.)

Lastly, both parties agreed that three levels should be deducted pursuant to Section 3E1.1(a) and (b) because the defendant had clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. (Plea Agmt. ¶ 6.b.(1)) Neither party took a position as to criminal history but rather left the defendant's Criminal History Category up to this Court. (Plea Agmt. ¶ 6.d.)

Furthermore, the parties estimated that:

> . . .the Total Offense Level is 31. The parties further agree to jointly recommend a sentence of 135 months, which is the high end of the anticipated applicable guidelines range. While 135 months is greater than the statutory maximum sentence available for a single count of Possession of Child Pornography, this recommendation is being made in exchange for the Government agreeing to dismiss the original Indictment that included two counts of Production of Child Pornography, which carry a statutory mandatory minimum term of imprisonment of 180 months. Considering all the facts and circumstances of the case, the parties agree that a 135 month term of imprisonment is appropriate.

(Plea Agmt. ¶ 6.c.)

During the change of plea hearing, Wilson provided the following in regard to this Court's inquiry regarding his satisfaction with counsel:

> THE COURT: Let me ask you, are you satisfied with the way your lawyer has handled your case?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: Has he investigated the case to your satisfaction?
>
> WILSON: I believe so.
>
> THE COURT: Has he done everything you've asked him to do?
>
> WILSON: I believe so, yes.
>
> THE COURT: No gripes or complaints whatsoever then?

>WILSON: No.
>
>THE COURT: Is there anything that you asked him to do that he didn't do?
>
>WILSON: No.
>
>THE COURT: All right. By pleading guilty you're giving up your right to a trial by jury. Are you sure that's what you want to do?
>
>WILSON: Yes, sir.

(Plea Tr., pp. 8-9)

Additionally, Wilson affirmed he understood all of the rights to a trial that he was waiving by virtue of his guilty plea and he swore that he was not coerced into accepting the plea:

>THE COURT: Now, knowing all that I'll ask you again are you sure you want to give up your right to trial by jury by pleading guilty?
>
>WILSON: Yes, Your Honor.
>
>THE COURT: Has anyone forced you or coerced you or threatened you in any manner to get you to plead guilty?
>
>WILSON: No, Your Honor.

(Plea Tr., p. 10)

Wilson also attested that his plea was not coerced in the plea agreement itself:

>This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(Plea Agmt. ¶ 10)

In regard to whether Wilson understood the plea agreement and had adequate time to review it, this Court inquired as follows:

> THE COURT: The lawyers have given me a 13 page written guilty plea agreement. And I see that you signed it as well as the lawyers on the last page; is that right?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: Have you gone over it in detail with your lawyer?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: Has he explained the contents of the agreement in detail to you?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: And do you understand the contents of the agreement?
>
> WILSON: Yes.
>
> THE COURT: Is there anything in there that you do not understand?
>
> WILSON: No.

(Plea Tr., pp. 10-11)

When thist Court asked Wilson ". . .I also see that the parties further agree that a sentence of 135 months is appropriate. So is that your agreement too, then?" He replied "Yes, sir." (Plea Tr., pp. 11-12) This Court also noted, ". . .the original indictment had two counts of production of child pornography that carried a mandatory minimum term under the statute of 180 months. So let's see here." (Plea Tr., p. 13)

This Court then advised defendant Wilson "I see at the bottom of page 6 and the top of page 7 you're also giving up your right to bring an appeal in this case and even as to the sentence itself if I agree to impose the 135-months prison sentence that you couldn't even appeal

the sentence itself: Is that your understanding?" Defendant Wilson answered, "Yes, Your Honor." (Plea Tr., p. 13)

The Presentence Report (PSR) did not agree with the parties' recommendation of a total offense level of 31, but instead calculated a base offense level of 32 because offenses involving conduct described in USSG §2G2.2(c)(1) are cross-referenced to USSG §2G2.1, which has a base offense level of 32. (PSR, ¶ 20) Two levels were added for the specific offense characteristic "the offense involved distribution" (PSR, ¶ 21), and 2 levels were added for the specific offense characteristic "the defendant was a parent, relative, or legal guardian of the minor involved in the offense" (PSR, ¶ 22). The adjusted offense level was 36. (PSR, ¶ 26) From the adjusted offense level of 36, three levels were deducted for acceptance of responsibility. (PSR ¶ 28, ¶ 29) The total offense level set forth in the PSR was 33. (PSR ¶ 30)

Wilson's criminal history score was zero, resulting in a criminal history category of I (PSR ¶ 34), based on a single 1995 conviction for Possession of Liquor by a Minor and Reckless Driving, which was amended from a charge of Driving Under the Influence. (PSR ¶ 33)

With a total offense level of 33 and a criminal history category of I, the advisory sentencing guidelines range was determined to be 135 to 168 months. (PSR, ¶57)

During the sentencing hearing, Wilson objected to some of the factual findings contained in the PSR, specifically that he has one brother and five step-siblings, but did not object to the application of the sentencing guidelines.

On his own behalf, Wilson stated:

I think – I just think, Your Honor, I was depressed. I was an alcoholic. And, you know, I made a horrible mistake. And it's not something I've ever thought about

> before. I realize that I did, you know, a great deal of damage to many people, you know, including my daughter.
>
> And, you know, those things can never be taken back. They can never be fixed. There's nothing I can do to fix that, but I just – I don't know. I wish there was something more I could do to repair the damage that I done. I don't know, Your Honor. I'm not good with words. So –

(Sentencing Transcript, hereinafter "Sent. Tr." at pp. 6-7)

This Court adopted the findings contained in the PSR without change (Sent. Tr. at pp. 2-3) and in accord with the joint recommendation of the parties, sentenced Wilson to a term of 135 months imprisonment. (Sent. Tr. at p. 7)

## III. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A § 2255

motion may be dismissed without hearing if (1) the movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Winters v. U.S.*, 716 F.3d 1098, 1103 (8th Cir. 2013) (quoting *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir.2001)).

The remedy provided by § 2255 does not encompass all claimed errors in conviction and sentencing. *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). A federal prisoner may file a § 2255 motion if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Meirovitz v. U.S.*, 688 F.3d 369, 370-71 (8th Cir. 2012) cert. denied, 133 S. Ct. 1248 (U.S. 2013).

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See*, *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir.1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See*, *Payne v. United States*, 78 F.3d 343, 347 (8th Cir.1996). When all the information necessary for the court to make a decision with regard to claims raised in a § 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief.

*United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

IV.     **BURDEN OF PROOF - INEFFECTIVE ASSISTANCE OF COUNSEL**

In order to prevail on a theory of ineffective assistance of counsel, the Movant must demonstrate two separate things; that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient) , and secondly that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001). While counsel has a duty to make reasonable investigations and decisions, "in determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance .'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

In order to prove that counsel's error was prejudicial, Movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome." *Id*. However, the reviewing court need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103 F.3d 710, 712 (8th Cir. 1997).

## DISCUSSION

V.     A. There is No Evidence Defense Counsel Failed to Negotiate a Plea
        Agreement that provided Consideration for Wilson's Guilty Plea.

Throughout his § 2255 motion, Wilson alleges that he received ineffective assistance of counsel based on a claim that his attorney failed to negotiate a plea agreement that conferred consideration in exchange for Wilson's guilty plea. His complaint is described, in part, as follows:

> The petitioner asserts that each and every instance of exchange by he and the government is 'absolute' contract relations. Under this premise, the governments [sic] behavior and that of Defense counsel is nothing short of conspiratorial and based on the facts herein presented the petitioner asserts that Counsel was ineffective regarding the lack of negotiation of the plea contract, failing to affect the plea contract, failing to safeguard the petitioners [sic] rights fails the first instance of the contract 'agency' relationship where counsel failure to make the petitioner aware of the true nature of things contractually and how they relate to his condition at the time of the contract . . .

(Wilson's Memorandum at p. 5)

These bald assertions by Wilson, however, are not supported by the record. The written plea agreement that Wilson entered into with the government was clearly well negotiated by defense counsel, because Wilson received a substantially reduced sentence as a result of the terms of the plea agreement. Wilson received a sentence of 135 months[1] rather than 180 months, a

---

[1] Toward the end of Wilson's Memorandum he stated, "Let it not be lost on the court, counsel has alluded to petitioner receiving the statutory maximum and not the advisory guidelines. This alone renders counsel's advise coercive and involuntary." (Wilson's Memorandum at p. 31) The record supports that Wilson did in fact receive a sentence that was at the low-end of the applicable guidelines range, 135 months, which was also the sentence that was jointly recommended by the parties. See also, Plea Agmt. ¶ 6.c., regarding the fact the parties agreed that their jointly recommended sentence of 135-months was greater than the statutory maximum sentence available for a single count of Possession of Child Pornography.

A defendant's representations during the plea-taking carry a strong presumption of verity that pose a formidable barrier in any subsequent collateral proceedings. *Nguyen v. U. S.*, 114 F.3d 699, 703 (8th Cir. 1997). Wilson's bald allegations of coercion cannot overcome the presumption of verity that attached to his statements in open court during the plea colloquy that he was not coerced into pleading guilty.

near four year reduction. That lower sentence was only available to Wilson, because the government agreed to dismiss the original indictment that contained charges carrying mandatory minimum statutory penalties of 180-months imprisonment in exchange for Wilson's guilty plea and waiver of appellate rights. Wilson complains, erroneously, that defense counsel failed to get the "best results." (Wilson's Memorandum at p. 29).

Wilson's current dissatisfaction with his 135-month sentence does not demonstrate that defense counsel's conduct fell outside the range of reasonable professional assistance, nor does it indicate that the outcome of the plea deal would have been any different. Not only did Wilson receive a sentence reduction in exchange for his plea, he also swore during the plea colloquy that defense counsel followed all of his wishes during plea negotiations. (Plea Tr., pp. 8-9)

Since Wilson's allegations are untrue and contradicted by the record, there is no need for an evidentiary hearing, *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013), and this ground for relief shall be dismissed.

V. **B. Wilson received the bargained for benefit of the plea agreement when the Government filed a Superseding Information, which contained only Possession of Child Pornography charges that did not carry a mandatory minimum term of 180 months imprisonment and he was sentenced to 135-months imprisonment, even though all of his conduct was considered in calculating the appropriate Guidelines range in his case.**

In Ground Two, Wilson claims that the government did not follow through with the promise to drop the production of child pornography charges, because that conduct was considered in calculating the sentencing guidelines range that was applicable in his case. Wilson asserted that ". . .until. . .some fifteen minutes before he had to plea, that he never herd [sic] the

word 'relevant conduct' moreover, did not understand its application in law. Counsel never explain [sic] what it meant to the defendant." (Wilson's Memorandum at p. 13)[2]

There is no basis for this allegation in the record. The record of the case supports that the production of child pornography charges were in fact dismissed. Wilson pled guilty to possession of child pornography. The language of the signed plea agreement clearly outlined all of Wilson's conduct surrounding his possession of child pornography, including that he not only took sexually explicit images of his daughter, but he had engaged in a pattern of sexually exploiting his daughter by watching pornographic movies with her, as well as giving her a vibrator and encouraging her to masturbate; he also intended to distribute the sexually explicit images of his daughter with an adult male friend. (Plea Agmt. at ¶4; Plea Tr. at pp. 15-17) The plea agreement did not require the government to ignore how it was that Wilson acquired the child pornography that he possessed, or what he intended to do with it.

The consideration offered by the government was the dismissal of the original three count indictment that contained two counts of production of child pornography, which carry 180-month mandatory minimum sentences, and agreement to jointly recommend a 135-month sentence of imprisonment. The superseding information permitted the defendant to plead guilty two charges that carried a maximum term of ten years imprisonment, each. An intrinsic benefit of the plea agreement was avoiding the public trial which would have required that the pornographic images Wilson took of his daughter be displayed in public.

Because Wilson's allegations that the Government did not follow through with the promises contained in the plea agreement cannot be accepted as true because they are

---

[2] The reference here is to the second page labeled number 13.

contradicted by the record, there is no need for an evidentiary hearing. *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013). Wilson's second ground for relief should be dismissed.

**V.     C. Wilson testified under oath that he had thoroughly reviewed the plea agreement with his lawyer and that his lawyer had answered all of his questions concerning the plea agreement.**

In Wilson's third ground for relief, he asserts that he didn't have adequate time to review the plea agreement. Nothing in the record supports this claim. To the contrary, the record reflects that not only did Wilson thoroughly review the plea agreement with his lawyer, he was also satisfied with the representation provided by his counsel. As noted above, during the change of plea hearing, while under oath, Wilson stated he fully understood the agreement and wished to plead guilty:

> THE COURT: The lawyers have given me a 13 page written guilty plea agreement. And I see that you signed it as well as the lawyers on the last page; is that right?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: And have you read the agreement?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: Have you gone over it in detail with your lawyer?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: Has he explained the contents of the agreement in detail to you?
>
> WILSON: Yes, Your Honor.
>
> THE COURT: And do you understand the contents of the agreement?
>
> WILSON: Yes.
>
> THE COURT: Is there anything in here that you don't understand?

   WILSON: No.

(Plea Tr., pp. 10-11, emphasis added) Wilson's sworn testimony supports that he'd gone over the plea agreement "in detail," his attorney had "explained the contents of the agreement in detail" to him, he "underst[ood] the contents of the agreement," and there was nothing about the agreement that he "d[id]n't understand." *Id*.

   Wilson's allegations regarding inadequate time to read and understand the plea agreement "cannot be accepted as true because they are contradicted by the record" and they "are inherently incredible" based on the record of the case. *Winters v. U.S.*, 716 F.3d 1098, 1103 (8th Cir. 2013) Wilson's third ground for relief shall be dismissed without the necessity of an evidentiary hearing.

V.  D. The appellate waivers contained in Wilson's plea agreement are enforceable.

   In his fourth ground for relief, Wilson complains that the appellate waiver should not be enforced even though he "admitted that the court did go over the waiver at the plea colloquy and the petitioner did answer in the affirmative as to whether he understood what the waiver represented." (Wilson's Memorandum at p. 23)

   The record of this case supports that Wilson knowingly and voluntarily waived his right to appeal. *United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999). At the time of his guilty plea, Wilson knew he had a right to appeal and that he was giving up that right. (Government Exhibit #1 at ¶7 and Plea Tr. 13) It is well-settled that a defendant can waive a procedural right, such as the right to appeal. *See*, *United States v. Andis*, 333 F.3d 886, 889-92 (8th Cir. (en banc) 2003) and *United States v. Michelsen*, 141 F.3d 867, 871 (8th Cir. 1998). "Accordingly, a

defendant who pleads guilty and expressly waived the statutory right to raise objections to a sentence may not then seek to appeal the very sentence which itself was part of the agreement." *United States v. Rutan*, 856 F.2d 827, 829 (8th Cir. 1992).

Provided the sentence was not in conflict with the negotiated agreement, which here it was not, defendant's knowing and voluntary waiver of appeal should be enforced. *United States v. Schulte*, 436 F.3d 849, 850-851 (8th Cir. 2006); *United States v. Vinson*, 414 F.3d 924, 9309-931 (8th Cir. 2005); *United States v. Greger*, 98 F.3d 1080, 1081-82 (8th Cir. 1996). Further, an appeal waiver will be enforced "against all issues that fall within the scope of the waiver if the defendant entered the plea agreement and appeal waiver knowingly and voluntarily and enforcement of the waiver would not cause a miscarriage of justice." *U.S. v. Boroughf*, 649 F.3d 887, 890 (8th Cir. 2011). Wilson adduces no facts to overcome the presumption of verity attached to his in court sworn statements. There will be no miscarriage of justice if the waivers are enforced here, because Wilson's 135 month sentence was legal and completely within the sentencing guidelines range of 135 months to 168 months. Additionally, when Wilson attempted to appeal the sentence in this case, the Eighth Circuit granted the government's request to dismiss his appeal. See, Docket Entry #63 in the instant case regarding the dismissal of *United States v. Michael Lee Wilson*, Case No. 12-1648, Eighth Circuit Court of Appeals. This ground for relief shall be summarily dismissed without the need for an evidentiary hearing.

**V.    E. Wilson received the consideration promised in the plea agreement and the terms were not unconscionable.**

The final ground for relief in Wilson's petition is once again an assertion that his plea agreement was unfair, specifically that it was a one sided contract and so unfair that it should be viewed as unconscionable. (Wilson's Memorandum at pp. 18-22) As stated multiple times, the plea agreement provided clear consideration to Wilson, and there was nothing improper, or unfair about the terms of the agreement. As Wilson's allegations are not supported by the record of the case, this ground also shall be dismissed without the need for an evidentiary hearing.

**VII.   CONCLUSION**

For the foregoing reasons, Wilson's § 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Wilson has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 9th day of October, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE